## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BARTLETT HOLDINGS, INC., BHI ENERGY I POWER SERVICES, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. _____ |
| v. | ) ) | |
| KORY LANE and PRIMORIS SERVICES CORPORATION, | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

## <u>PLAINTIFFS' VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES AND DEMAND FOR JURY TRIAL</u>

Plaintiffs Bartlett Holdings, Inc. ("BHI Energy") and BHI Energy I Power Services, LLC ("Power Services" and, collectively with BHI Energy, "BHI," "the Company," or "Plaintiffs"), by and through their undersigned counsel, hereby file this Complaint seeking injunctive relief and damages against Defendants Kory Lane ("Lane" or "the Former Employee") and Primoris Services Corporation ("Primoris").

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Bartlett Holdings, Inc. ("BHI Energy") is a corporation that is organized under the laws of the State of Delaware.

2.      Plaintiff BHI Energy I Power Services, LLC ("Power Services") is a limited liability company that is organized under the laws of the State of Delaware and a wholly-owned subsidiary of BHI Energy.

3.      BHI is in the energy business.  In the simplest of terms, BHI works to support energy and power production and power delivery, providing safe, high quality engineering, construction and maintenance services that drive operational efficiency.  BHI's services include,

among other things, specialty maintenance, staffing solutions, radiation protection, and professional technical staff augmentation services to governmental and private clients in the power generation, transmission and distribution, oil and gas, industrial, and energy industries.

4.     Defendant Kory Lane is a former BHI employee who is a resident of and may be served in the State of Florida.

5.     Defendant Primoris is Defendant Lane's former and, upon information belief, current employer.

6.     Defendant Primoris is a Delaware Corporation with its principal place of business in Dallas, Texas.

7.     This Court has proper jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as this action arises under the laws of the United States, specifically, under 18 U.S.C. § 1836 *et seq*., the federal Defend Trade Secrets Act of 2016 ("DTSA").  Furthermore, this Court has supplemental jurisdiction of the state law claims articulated herein, pursuant to 28 U.S.C. § 1367.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(3) and (c)(3). Defendant Primoris is incorporated in the State of Delaware, and Defendant Lane consented to the jurisdiction of this Court via his Incentive Unit Grant Agreement with BHI.

## FACTS

### *BHI's Confidentiality and Conflict-of-Interest Policies*

9.     In the highly competitive industry in which BHI operates, its confidential, proprietary, and trade secret information is critical to maintaining BHI's competitive position. Accordingly, BHI takes a number of steps to protect the confidentiality of its information.  Such steps include: (1) requiring the execution of non-compete, non-solicitation, and nondisclosure restrictive covenants; (2) policies in the BHI Energy Employee Handbook that forbid employees

from misappropriating BHI's confidential, proprietary, and trade secret information; (3) marking many of BHI's most confidential documents with a "confidential" or similar legend; (4) conducting on-the-job security training and utilizing occupational security best practices; (5) implementing electronic security measures, such as use of passwords, security time-outs on computers, and segregation of confidential information; and (6) employing physical security measures, such as placing locks on offices, doors, and file cabinets.

10.    Consistent with BHI's business practices, upon hire, Defendant Lane received a copy of BHI's Employee Handbook and the policies included therein.  *See* Exhibit **A**.[1]

11.    One of the policies contained in the Employee Handbook is the Communications Policy.  *See id*. at 4-11.  Pursuant to the Communications Policy, communications made on company-owned laptops and/or through BHI's email systems are the sole property of BHI.  *See id*. at 5 ("All information or transmissions that are created, sent, received or stored on the Company's electronic communication systems, including passwords, ("electronic communications") are the sole property of the Company.").

12.    The Communications Policy also expressly states that BHI personnel shall not use BHI's electronic communication devices or electronic communication systems to divulge confidential, proprietary, and trade secret information, or conduct business that is in conflict with the interests of BHI.  *See id*. at 8 ("Personnel shall not use the Company's or other electronic communication devices or electronic communication systems to . . . Release any communication that violates the Company's confidentiality requirements including divulging confidential, proprietary or privileged information.").

---

[1]  A true and correct copy of relevant excerpts of the Employee Handbook is attached hereto as **Exhibit A**.

13.     Defendant Lane was subject to BHI's Communications Policy.

14.     As an employee of BHI, Defendant Lane was provided with a Company-owned laptop, granted access to BHI's computer systems, and maintained an email account through BHI's email system, all of which he was entrusted to use to further BHI's business goals.

15.     The Employee Handbook also contains a Conflict of Interest provision, which prohibits employees from acting in a manner inconsistent with their obligations as an employee of BHI.  *See id*. at 12.

16.     The Employee Handbook's Confidentiality provision prohibits the disclosure of any of BHI's confidential information unless so authorized during or following employment.  *See id*. at 13.

17.     Defendant Lane was subject to both BHI's Conflict of Interest provision and the confidentiality provision of the Employee Handbook.

18.     The Employee Handbook also contains a Code of Ethics, pursuant to which Defendant Lane agreed to work loyally and faithfully on behalf of BHI and to avoid any conflict of interest.  *See id*. at 12-14.

19.     BHI's Code of Ethics also provides that employees maintain the confidentiality of BHI's confidential, proprietary, and trade secret information, or of any third party confidential information entrusted to BHI.  *See id*. at 12-14.

### Defendant Lane's BHI Non-Compete, Non-Solicitation and Non-Disclosure Agreement

20.     In furtherance of BHI's business practice of protecting their legitimate business interests and confidential, proprietary, and trade secret information, BHI required Defendant Lane to execute a Non-Compete, Non-Solicitation and Non-Disclosure Agreement (the "Non-Compete Agreement") upon his hire.

4

21.     A true and correct copy of Defendant Lane's BHI Non-Compete, Non-Solicitation and Non-Disclosure Agreement is attached hereto as **Exhibit B**.

22.     Pursuant to the Non-Compete Agreement, Defendant Lane agreed to refrain from competing against BHI for a period of six months following the end of his employment relationship with BHI.  *See* **Exhibit B**, Section 1.

23.     Specifically, the Non-Compete Agreement's "Non-Compete Covenant" states:

> For a period of 6 months after resignation or termination, Kory Lane will not directly or indirectly engage in any business that is in competition with the direct work Kory Lane performs for Company.  This Covenant (and all covenants herein) shall apply to the geographical area of the State of Florida.

**Exhibit B**, Section 1.

24.     Pursuant to the Non-Compete Agreement, Defendant Lane also agreed to refrain from soliciting BHI's customers for a period of one year following the end of his employment relationship with BHI.  *See* **Exhibit B**, Section 2.

25.     Specifically, the Non-Compete Agreement's "Non-Solicitation Covenant" states:

> For a period of 1 year after resignation or termination, Kory Lane will not directly or indirectly solicit business from, or any attempt to sell, license or provide the same or similar products or services as are now provided to any customer or client of Company. Further, for a period of 1 year after resignation or termination, Kory Lane will not directly or indirectly solicit, induce or attempt to induce any employee of Company to terminate his or her employment with the Company.

**Exhibit B**, Section 2.

26.     Defendant Lane's Non-Compete Agreement also includes a "Confidentiality" provision, which states:

> Kory Lane will not at any time or in any manner either directly or indirectly, use for their own personal benefit, or divulge or disclose or communicate in any manner any information that is confidential or proprietary to Company including any training received during employment with Company,

unpatented inventions, ideas, methods and discoveries, trade secrets, know-how, unpublished patent applications and other confidential intellectual property or methodology as well as any customer information. This obligation includes Company's designs, specifications, documentation, components, source code, object code, images, icons, audio visual components and objects, schematics, drawings, protocols, processes, and other visual depictions, in whole or in part, of any of the foregoing. Kory Lane will protect such information and treat it as strictly confidential and understands and agrees that the obligations contained herein shall remain in effect for a period of three (3) years from the date of Termination.

**Exhibit B**, Section 3.

### *Defendant Lane's Incentive Unit Grant Agreement*

27.     During his employment with BHI, Defendant Lane also executed an Incentive Unit Grant Agreement.

28.     The Incentive Unit Grant Agreement contains restrictive covenants governing Defendant Lane's employment with BHI which generally supersede and preempt the Non-Compete Agreement.  However, the Incentive Unit Agreement specifically provides that the restrictive covenants and other obligations contained in that Agreement are independent of, supplemental to and do not modify, supersede or restrict (and shall not be modified, superseded by or restricted by) any noncompetition, nonsolicitation, confidentiality or other restrictive covenants in any other current agreement, *i.e.*, Defendant Lane's Non-Compete Agreement.  *See* **Exhibit C**, Paragraph 11(c).

29.     Pursuant to the Incentive Unit Grant Agreement, Defendant Lane agreed to refrain from competing against BHI for a period of one year following the end of his employment relationship with BHI.  *See* **Exhibit C**, Annex A, Paragraphs 4 and 10.

30.     Specifically, the Incentive Unit Grant Agreement's Non-Compete provision states:

Executive acknowledges that in the course of Executive's service as an employee of the Company or its Subsidiaries that Executive may become familiar with the Company's or another member of the Group's trade secrets

6

> and that Executive has and will become familiar with the confidential
> information concerning the Company and the other members of the Group
> and that Executive's services are and will be of special, unique and
> extraordinary value to the Company and/or its Subsidiaries. Without
> limiting any other obligations of Executive pursuant to this Annex,
> Executive accordingly covenants and agrees with the Company that during
> Executive's service as an employee of the Company or its Subsidiaries and
> for the one-year period thereafter, Executive has not and shall not, directly
> or indirectly, engage in, or serve as a principal, partner, joint venturer,
> member, manager, trustee, agent, stockholder, director, officer or employee
> of, or advisor to, or in any other capacity, or in any manner, own, control,
> manage, operate, or otherwise participate, invest, or have any interest in, or
> be connected with, any person, firm or entity that engages in any activity
> which competes directly or indirectly with any business of the Company or
> any of its Subsidiaries anywhere in the world in which the Company or any
> of its Subsidiaries conducts or actively proposes to conduct business at any
> time within the two-year period immediately preceding the termination of
> Executive's service as an employee of the Company or its Subsidiaries in
> which Executive has been or would be required to employ, reveal, or
> otherwise utilize trade secrets used hereafter by the Company or another
> member of the Group but prior to Executive's termination.

**Exhibit C**, Annex A, Paragraph 10; *see also* Paragraph 4.

31.     Pursuant to the Incentive Unit Grant Agreement, Defendant Lane also agreed to refrain from soliciting BHI's customers for a period of one year following the end of his employment relationship with BHI.  *See* **Exhibit C**, Annex A, Paragraph 3.

32.     Specifically, the Incentive Unit Grant Agreement's Non-Solicitation provision states:

> During Executive's service as an employee of the Company or its
> Subsidiaries and for the one-year period thereafter, Executive shall not, to
> the detriment of the Company or its Subsidiaries, directly or indirectly, for
> Executive or on behalf of any other person, firm or entity, solicit or
> otherwise attempt to take away any supplier, vendor, or customer of any
> member of the Group who Executive solicited or did business with on
> behalf of the Company or its Subsidiaries or with whom Executive
> otherwise became acquainted as a result of Executive's employment with
> the Company or its Subsidiaries.

**Exhibit C**, Annex A, Paragraph 3.

33.     The Incentive Unit Agreement also tolls the time period of each of the restrictive covenants contained in it for a period equal to any violation by stating:

> In the event of any violation of the provisions of [Annex A to this Incentive Unit Agreement], Executive acknowledges and agrees that the post-termination restrictions contained in [Annex A to this Incentive Unit Agreement] shall be extended by a period of time equal to the period of such violation, it being the intention of the parties hereto that the running of the applicable post-termination restriction period shall be tolled during any period of such violation.

**Exhibit C**, Paragraph 6(d).

34.     In the Incentive Unit Grant Agreement, Defendant Lane also agreed to the exclusive jurisdiction of this Court:

> **Executive further agrees that any dispute arising from or relating to this <u>Agreement</u> shall be brought exclusively in the** Court of Chancery of the State of Delaware (the "<u>Court of Chancery</u>") or, to the extent the Court of Chancery does not have subject matter jurisdiction, the **United States District Court for the District of Delaware and** the appellate courts having jurisdiction of appeals in such courts (the "<u>Delaware Federal Court</u>") or, to the extent neither the Court of Chancery nor the Delaware Federal Court has subject matter jurisdiction, the Superior Court of the State of Delaware (the "<u>Chosen Courts</u>"), and, solely with respect to any such action **(i) irrevocably submits to the exclusive jurisdiction of the Chosen Courts, (ii) waives any objection to laying venue in any such action in the Chosen Courts, (iii) waives any objection that the Chosen Courts are an inconvenient forum or do not have jurisdiction over any party hereto** and (iv) agrees that service of process upon such party in any such action shall be effective if notice is given in accordance with <u>Section</u> **Error! Reference source not found.**.

**Exhibit C**, Paragraph 11(g) (emphasis added).

35.     At all times during his employment with BHI, Defendant Lane was subjected to restrictive covenants concerning his ability to compete against and solicit BHI customers following his employment with BHI.

### *Defendant Lane's Employment with BHI and Use and Access of BHI's Confidential, Proprietary, Trade Secret Information*

36.     Defendant Lane began employment with BHI in August 2020 as an Operations Manager for BHI Energy's Transmission and Distribution ("T&D") Construction Division in West Palm Beach, Florida.

37.     As an Operations Manager, Defendant Lane was responsible for managing a team that serviced and constructed new or existing power substations, and transmission and distribution systems for BHI clients who are energy providers.

38.     Given his status as a trusted, high-level management employee, Defendant Lane had knowledge of and access to BHI's confidential, proprietary, and trade secret information.  Such information included BHI's financial information, pricing information, bidding strategies, profit margins, customer contacts and preferences, processes, methods, ongoing and upcoming customer projects and needs, and corporate and marketing strategies.

### *Theft of BHI's Confidential Information*

39.     Unbeknownst to BHI, during his employment with BHI, Defendant Lane used his BHI email account to email confidential, proprietary, and trade secret information (e.g., key performance indicators, project pricing, revenue, and margin information) to a third party, Kyle Lane at Primoris, on Wednesday, April 14, 2021.

40.     Primoris is also engaged in the business of specialty construction for clients in the energy and oil and gas industries, is a competitor of BHI, and is also Defendant Lane's former and current employer.

41.     Prior to accepting employment with BHI, Defendant Lane was employed by Primoris Services Corporation for six years.

42.     Defendant Lane had no legitimate business reason to forward BHI's confidential, proprietary, and trade secret information to his former employer, Primoris, or to his personal email account.

43.     Just two days after forwarding BHI's confidential, proprietary trade secret information, on Friday, April 16, 2021, after only eight months of employment with BHI, Defendant Lane resigned from his position at BHI, and upon information and belief, returned to work at Primoris as an Area Manager servicing clients in the energy industry within the State of Florida, including a current BHI client.

44.     After his employment relationship with BHI ended, Defendant Lane maintained confidential BHI documents in his possession.

### *BHI's Efforts to Curb Defendants' Illegal Conduct*

45.     On April 20, 2021, BHI sent a letter to Defendant Lane via email, and certified mail demanding that Defendant Lane immediately cease and desist his misappropriation of BHI's confidential, proprietary, and trade secret information, identify all third-party individuals and entities with whom Defendant Lane had shared BHI's confidential, proprietary, and trade secret information, and immediately return all BHI property in his possession.[2]

46.     In the letter, BHI noted that it would pursue legal action if Defendant Lane failed to comply with BHI's demands.  *See id.* at 4.

47.     On April 20, 2021, BHI also sent a letter to Tom McCormick, Chief Executive Officer of Primoris, notifying Primoris of Defendant Lane's restrictive covenants with BHI, including his promises not to compete against BHI or solicit BHI's clients and employees for a

---

[2] *See* **Exhibit D**, Letter to Defendant Lane sent via email and certified mail on April 20, 2021.

period of one year following his employment with BHI, and promise not to disclose BHI's confidential, trade secret information.[3]

48.     At the time, Primoris indicated that Defendant Lane was not an employee of Primoris.

49.     However, upon information and belief, Defendant Lane later accepted employment with and continues to be employed by Primoris.

50.     On May 17, 2021,[4] BHI sent Defendant Lane a final letter requesting that Defendant Lane detail his unauthorized use and misappropriation of BHI's confidential and trade secret information, and comply with the terms of his Non-Compete Agreement and Incentive Unit Grant Agreement in light of his employment with Primoris.

51.     To date, Defendant Lane has failed to respond to BHI's May 17, 2021 letter.

### The Present Action

52.     Defendant Lane's misconduct has and will inevitably continue to harm BHI and provide a competitive advantage to Defendant Lane and Primoris.

53.     BHI has a legitimate business interest in preventing Defendants from exploiting or appropriating the goodwill of its customer relationships, and especially the goodwill of the customer relationships developed and nurtured by Defendant Lane using BHI resources during his employment at BHI.

54.     BHI has been and will continue to be damaged unless Defendants are restrained from using the ill-gotten knowledge and violating Defendant Lane's Non-Compete Agreement, Incentive Unit Agreement, BHI's policies, and the law.

---

[3] *See* **Exhibit E**, Letter to Defendant Primoris sent April 20, 2021.
[4] *See* **Exhibit F**, Letter to Defendant Lane sent via email and on May 17, 2021.

## COUNT I
## VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016
### (Defendant Lane)

55. BHI repeats and realleges paragraphs 1 through 54 above as if fully stated herein.

56. As a result of his employment and position of trust with BHI, Defendant Lane obtained access to BHI's trade secret information, including but not limited to, information related to pricing, technical approaches, bidding strategies, bidding proposal methodology, and unique customer information. These documents and information are unique to BHI and derive their independent economic value from not being commonly known or available to the public.

57. BHI takes reasonable steps to protect the secrecy of its trade secret information discussed herein, which includes, but is not limited to, use of passwords, security time-outs, Non-Compete Agreements, restrictive covenants, and confidentiality policies.

58. Significantly, BHI employed such security measures to protect the secrecy of trade secret information that Defendant Lane forwarded from his BHI email account and attempted to forward to Primoris.

59. The trade secret information improperly disclosed or otherwise misappropriated by Defendant Lane is utilized by BHI, or intended for use by BHI, in interstate, and international commerce.

60. Notwithstanding BHI's efforts to maintain the confidentiality of its trade secrets, Defendant Lane obtained confidential, proprietary, and trade secret information from BHI's computer systems and then emailed such information from his BHI email account without authorization, and attempted to send such information to Primoris, without authorization from BHI, all while still employed with BHI, and just days before his resignation.

61.     In doing so, Defendant Lane violated policies in the Employee Handbook, his Non-Compete Agreement, and Incentive Unit Agreement which all prohibit disclosure of confidential, proprietary, and trade secret information.

62.     Defendant Lane knew and/or had reason to know that the disclosures and utilization were illegal and violated Defendant Lane's obligations to BHI and the law.

63.     Defendant Lane's misappropriation of BHI's trade secrets gave and continues to give Defendant Lane an unfair and unjust competitive advantage.

64.     The use and disclosure, and even threatened use and disclosure of BHI's trade secrets by Defendant Lane entitles BHI to injunctive relief and damages, pursuant to 18 U.S.C. § 1836(b)(3).

65.     At all material times, Defendant Lane acted willfully, maliciously, and in bad faith.

66.     BHI has suffered and will continue to suffer irreparable harm as a result of Defendant Lane's misappropriation.

### COUNT II
### MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF
### THE DELAWARE UNIFORM TRADE SECRETS ACT, 6 DEL. C. § 2001 ET SEQ.,
**(Defendant Lane)**

67.     BHI repeats and realleges paragraphs 1 through 54 above as if fully stated herein.

68.     As a result of his employment and position of trust at BHI, Defendant Lane was provided access to BHI's valuable trade secrets, including but not limited to pricing strategies, bidding strategies and methodology, employee information, and technical information.

69.     Defendant Lane misappropriated BHI's trade secret information, collecting such information from BHI's computer systems and using BHI's email system, and attempting to send such information to third parties, including Kyle Lane at Primoris.

70.     Defendant Lane's misappropriation of BHI's trade secret information violated numerous policies in BHI's Employee Handbook, in particular, its Code of Ethics and Confidentiality provisions, Defendant Lane's Non-Compete Agreement, and Incentive Unit Agreement that are all aimed at preventing the misappropriation of trade secret information.  Such policies are just one way that BHI protects its trade secret information.  BHI also protects its trade secret information by conducting on-the-job security training and utilizing occupational security best practices; implementing various  electronic security measures, such as use of passwords, security time-outs on computers, and segregation of confidential information; and employing various physical security measures, such as placing locks on offices, doors, and file cabinets.

71.     Prior to the end of his employment with BHI, Defendant Lane unlawfully disclosed or otherwise misappropriated BHI's trade secret information.

72.     Defendant Lane knew and/or had reason to know that the disclosures and were illegal and violated Defendant Lane's obligations to BHI.

73.     Defendant Lane's misappropriation of BHI's trade secrets gave and continues to give Defendant Lane an unfair and unjust competitive advantage.

74.     The information misappropriated by Defendant Lane constitutes trade secrets under the Delaware Uniform Trade Secrets Act, 6 *Del. C.* § 2001 et seq.

75.     The use and disclosure, and even threatened use and disclosure, of BHI's trade secrets by Defendant Lane entitles BHI to injunctive relief and damages, pursuant to the Delaware Uniform Trade Secrets Act.

76.     At all material times, Defendant Lane acted willfully, maliciously, and in bad faith.

77.     BHI has suffered and will continue to suffer irreparable harm as a result of Defendant Lane's misappropriation.

## COUNT III
## BREACH OF FIDUCIARY DUTY
### (Defendant Lane)

78.　BHI repeats and realleges paragraphs 1 through 54 above as if fully stated herein.

79.　As a high-level employee, Defendant Lane was entrusted with BHI's confidential information, and, as such, owed a fiduciary duty to BHI to not divulge, disclose, expose, or misuse such information.

80.　Defendant Lane also owed BHI a fiduciary duty not to act contrary to BHI's interest, which included, but was not limited to, competing with or providing a competitive advantage to third parties while still employed with BHI.

81.　However, Defendant Lane breached his fiduciary duties, by, *inter alia*, disclosing and/or using BHI's confidential and proprietary information to/for his own personal gain during his employment with BHI.

82.　As a direct and proximate result of Defendant Lane's willful breach of his fiduciary duties to BHI, BHI has suffered and will continue to suffer damages in the form of wages and benefits paid to, but not earned by Defendant Lane, lost business, lost revenue, lost goodwill, compensatory damages and other immeasurable and irreparable injuries which cannot possibly be ascertained at this time.

83.　Based on the foregoing wrongful conduct by Defendant Lane, which was knowing, willful, intentional, malicious, reckless and/or grossly negligent, Defendant Lane breached his fiduciary duty to BHI and BHI is entitled to disgorgement of any compensation paid to Defendant Lane as well as an award of punitive damages.

## COUNT IV
## BREACH OF EMPLOYEE DUTY OF LOYALTY
### (Defendant Lane)

84.　BHI repeats and realleges paragraphs 1 through 54 above as if fully stated herein.

85.     Defendant Lane owed BHI a duty of loyalty, good faith, fidelity, and trust when he was a BHI employee, including, but not limited to, a duty to not engage in disloyal acts in anticipation of future competition, such as misusing confidential information acquired during the course of his employment.

86.     Defendant Lane was aware of his duty of loyalty to BHI, as evidenced by his receipt of BHI's Employee Handbook, which details the duty of loyalty owed to BHI by BHI employees.

87.     However, Defendant Lane breached his duty of loyalty, as he misappropriated BHI's confidential and proprietary information all while still employed by BHI.

88.     As a direct and proximate result of Defendant Lane's willful breach of his duty of loyalty to BHI, BHI has suffered and will continue to suffer damages in the form of wages and benefits paid to, but not earned by Defendant Lane, lost business, lost revenue, lost goodwill, compensatory damages and other immeasurable and irreparable injuries.

89.     Based on the foregoing wrongful conduct by Defendant Lane, which was knowing, willful, intentional, malicious, reckless and/or grossly negligent, Defendant Lane breached his duty of loyalty to BHI and BHI is entitled to disgorgement of any compensation paid to Defendant Lane as well as an award of punitive damages.

**COUNT V**
**BREACH OF THE NON-COMPETE AGREEMENT – CONFIDENTIALITY PROVISION**
**(Defendant Lane)**

90.     BHI repeats and realleges paragraphs 1 through 54 above as if fully stated herein.

91.     The Non-Compete Agreement is a valid and binding contract supported by good and valuable consideration.

92.     BHI has performed all obligations necessary in order to demand specific performance by Defendant Lane.

93.     Pursuant to the confidentiality provision contained in the Non-Compete Agreement, Defendant Lane is prohibited from improperly disclosing or using BHI's confidential, proprietary information, including its trade secrets for a period of three years following the termination of his employment with BHI.

94.     The confidentiality provision contained in the Non-Compete Agreement is valid and enforceable under the laws of the State of Delaware. The confidentiality provision contained in the Non-Compete Agreement is reasonably calculated to protect BHI's legitimate business interests, which include, but are not limited to, protection of BHI's confidential, proprietary information, including trade secrets.

95.     Defendant Lane has improperly disclosed and/or otherwise unlawfully misappropriated and/or used BHI's confidential, propriety information—including its trade secrets—for the benefit of himself and Primoris, in violation of his Non-Compete Agreement.

96.     Defendant Lane's actions, including those described above, constitute breaches of the Non-Compete Agreement.

97.     As a direct and proximate result of Defendant Lane's breaches of the Non-Compete Agreement, BHI has suffered and will continue to suffer great and irreparable harm resulting in considerable damages that cannot fully be ascertained at this time. In addition, or in the alternative, BHI has suffered damages in an amount to be determined at trial.

98.     BHI has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest.

**COUNT VI**
**BREACH OF THE INCENTIVE UNIT AGREEMENT**
**– NON-COMPETE PROVISION**
**(Defendant Lane)**

99.     BHI repeats and realleges paragraphs 1 through 54 above as if fully stated herein.

100. The Incentive Unit Agreement is a valid and binding contract supported by good and valuable consideration.

101. BHI has performed all obligations necessary in order to demand specific performance by Defendant Lane.

102. Pursuant to the non-compete covenant contained in the Incentive Unit Agreement, Defendant Lane is prohibited from directly or indirectly engaging in business with any Company that is in competition with his work at BHI for a period of one year following the termination of his employment with BHI.

103. The non-compete covenant contained in the Incentive Unit Agreement is valid and enforceable under the laws of the State of Delaware.  The non-compete covenant contained in the Incentive Unit Agreement is reasonably calculated to protect BHI's legitimate business interests, which include, but are not limited to, protection of BHI's confidential, proprietary information, including trade secrets.

104. Upon information and belief, Defendant Lane has improperly accepted and continues to hold employment with BHI competitor Primoris in Florida servicing construction clients in the energy industry, in violation of his Incentive Unit Agreement.

105. Defendant Lane's actions, including those described above, constitute breaches of the Incentive Unit Agreement.

106. As a direct and proximate result of Defendant Lane's breaches of the Incentive Unit Agreement, BHI has suffered and will continue to suffer great and irreparable harm resulting in considerable damages that cannot fully be ascertained at this time. In addition, or in the alternative, BHI has suffered damages in an amount to be determined at trial.

107.    BHI has a substantial likelihood of success on the merits of this claim and injunctive relief would serve the public interest.

**COUNT VII**
**TORTIOUS INTERFERENCE WITH**
**CONTRACTUAL RELATIONS**
**(Defendant Primoris)**

108.    BHI repeats and realleges paragraph 1 through 54 above as if fully stated herein.

109.    Primoris has solicited and/or taken affirmative steps to solicit Defendant Lane with the intent to cause Defendant Lane to breach his contractual relationship with BHI by securing employment at Primoris, a direct competitor of BHI.

110.    At the time of Defendant Lane's hire by Primoris in 2021, Primoris knew that Defendant Lane was subject to non-competition restrictive covenants as well as other restrictive covenants with BHI.

111.    Even after receiving explicit notice of Defendant Lane's restrictive covenants, upon information and belief, Primoris employed and continues to employ Defendant Lane.

112.    Primoris' intentional and unlawful interference with Defendant Lane's Non-Compete Agreement and Incentive Unit Agreement has deprived BHI of the economic benefit of its contracts with Defendant Lane.

113.    At all material times, Primoris acted knowingly, willfully, intentionally, maliciously, recklessly or grossly negligent.

114.    BHI has a substantial likelihood of success on the merits of this claim and the requested relief would serve the public interest.

**JURY DEMAND**

BHI demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Wherefore, BHI is entitled to and requests that the Court enter judgment:

1. against Defendant Lane:

   a. Enjoining Defendant Lane, pursuant to 18 U.S.C. § 1836(b)(3)(A) and/or the Delaware Uniform Trade Secrets Act, from using or disclosing BHI's trade secret information for the benefit of himself or otherwise;

   b. Requiring Defendant Lane to return all property and proprietary information belonging to BHI in his possession, custody, or control;

   c. Issuing an order providing for the seizure of all of BHI's trade secret information and other BHI property necessary to prevent the propagation or dissemination of BHI's trade secret information pursuant to 18 U.S.C. § 1836(b)(2)(A);

   d. Awarding BHI a permanent injunction to enforce the terms of the Non-Compete Agreement, including without limitation its non-compete, non-solicitation, and confidentiality provisions;

   e. Awarding BHI a permanent injunction to enforce the terms of the Incentive Unit Agreement, including without limitation its non-compete, non-solicitation, and confidentiality provisions;

   f. Awarding BHI all compensatory, exemplary, and punitive damages provided for under relevant law, in an amount to be proven at trial;

g.  Requiring Defendant Lane to disgorge all wages, including payments by BHI to Defendant Lane after Defendant Lane's disclosure of BHI's trade secret and confidential information to unauthorized third-parties;

h.  Awarding BHI its costs incurred in this action, including without limitation its reasonable attorneys' fees;

i.  Awarding BHI all pre- and post-judgment interest; and

j.  Awarding BHI such other equitable and further relief as the Court deems just and proper.

2.  against Defendant Primoris:

a.  awarding BHI compensatory damages in an amount to be determined at trial;

b.  Awarding BHI its costs incurred in this action, including without limitation its reasonable attorneys' fees;

c.  Awarding BHI all pre- and post-judgment interest; and

d.  Awarding BHI such other equitable and further relief as the Court deems just and proper.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:                              By:  */s/ John A. Sensing*

David Long-Daniels, Esquire                   John A. Sensing (#5232)
Allyson Lumpkin, Esquire                       Jesse L. Noa (#5973)
SQUIRE PATTON BOGGS                            1313 North Market Street
1230 Peachtree St., NE, Suite 1700             Hercules Plaza, 6th Floor
Atlanta, GA  30309                             Wilmington, DE  19801
(678) 272-3200 – Telephone                     (302) 984-6000 – Telephone
david.long-daniels@squirepb.com                (302) 658-1192 – Facsimile
allyson.lumpkin@squirepb.com                   jsensing@potteranderson.com
                                               jnoa@potteranderson.com

Dated:  July 13, 2021                    *Attorney for Plaintiffs Bartlett Holdings, Inc., BHI*
7294742 / 52069                          *Energy I Power Services, LLC*